IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KALILAH BRANTLEY, | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| AMERICAN AIRLINES GROUP, INC., | : | NO. 16-3540 |
| Defendant. | : | |

**MEMORANDUM**

PRATTER, J.                                                                                                 NOVEMBER 21, 2016

Plaintiff Kalilah Brantley contends that her employer, American Airlines, is responsible for the conduct of Darryl Strickland, a co-employee who she alleges sexually assaulted her at her home and then stalked and harassed her at work. American Airlines filed a motion to dismiss Ms. Brantley's Amended Complaint, claiming that she did not sufficiently plead any claims against it and that her claims were, in any event, barred by Pennsylvania's Workers' Compensation Act. Having heard oral argument on November 3, 2016, the Court now grants in part and denies in part American Airlines' motion.

**I. Background**

Ms. Brantley is a customer service agent for American Airlines at Philadelphia International Airport. Darryl Strickland was also employed by American Airlines at the airport. When he was hired, Mr. Strickland had a criminal record that included charges of stalking and harassing a woman. Ms. Brantley suggests that American Airlines knew or should have known this because Mr. Strickland's mother also was an American Airlines employee and knew about the charge. In the summer of 2014, Mr. Strickland sexually assaulted another American Airlines employee in the airport employee parking lot. That earlier victim reportedly told other American Airlines employees about the incident, but Mr. Strickland was not terminated or disciplined.

1

Not knowing about this prior incident or Mr. Strickland's record, Ms. Brantley invited Mr. Strickland to her home on August 21, 2015, where he sexually assaulted her.  She immediately drove herself to the emergency room and called the police.  On August 25, 2015, she informed American Airlines' Human Resources department about the incident.  In addition, the next day Mr. Strickland was criminally charged for assault.  Ms. Brantley also obtained a Protection from Abuse Order (PFA) prohibiting Mr. Strickland from having any interaction with her at work.  She gave a copy of the order to American Airlines.

On August 28, 2015, Mr. Strickland violated the PFA order by changing his shift to be assigned to Ms. Brantley's terminal at the airport for a shift partially overlapping Ms. Brantley's shift.  Because of this, Ms. Brantley's supervisor forced her to leave her work area and "essentially go into hiding" to avoid Mr. Strickland for the remainder of her shift.  Ms. Brantley promptly reported the situation to the Airlines's Human Resources.  Five days later, Mr. Strickland again appeared in Ms. Brantley's airport terminal during her shift and loitered around her work area "for no legitimate reason," but Ms. Brantley was not at that counter during that shift.  Ms. Brantley again informed HR, and, according to Ms. Brantley, an HR manager implied that HR knew about Mr. Strickland's criminal record and that he (Mr. Strickland) had not been properly vetted prior to his employment by the airlines.

In October 2015, Mr. Strickland sexually assaulted another employee at the airport.  On November 24, 2015, Mr. Strickland followed Ms. Brantley, approached her from behind as she applied lipstick in a common area for employees, stared at her, and whistled at her, despite having "no legitimate reason" to be in the area.  Ms. Brantley told him to leave and he refused.  According to Ms. Brantley, these incidents caused her fear and emotional distress.  She reported the November incident to airport police, who told her that American Airlines had never

forwarded the PFA order or criminal docket to corporate security, in violation of American Airlines' policy. On December 16, 2016, Mr. Strickland's employment was terminated.

Ms. Brantley alleges one count of negligence against American Airlines, claiming that it negligently hired and supervised Mr. Strickland, and one count of assault and battery, claiming that Mr. Strickland placed Ms. Brantley in reasonable fear of bodily harm in and out of the workplace, that he intentionally touched and harmed her, and that American Airlines is responsible for his workplace conduct via the legal theory of *respondeat superior*.

This case was originally filed in state court. American Airlines removed the case to federal court on the basis of diversity jurisdiction and filed a motion to dismiss. Ms. Brantley filed an Amended Complaint, mooting that first motion.[1] American Airlines again moved to dismiss.

**LEGAL STANDARD**

A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint. Although Rule 8 of the Federal Rules of Civil Procedure requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), "in order to 'give the defendant fair notice of what the...claim is and the grounds upon which it rests,' " *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted) (alteration in original), the plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do," *id.*

To survive a motion to dismiss, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Specifically, "[f]actual allegations must be enough

---

[1] Ms. Brantley's Amended Complaint added Defendant Darryl Strickland for the first time. His presence in the case, however, would destroy diversity jurisdiction, and the Court exercised its discretion under 28 U.S.C. § 1447(e) to deny Ms. Brantley's attempt to join a non-diverse party.

3

to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The question is not whether the claimant "will ultimately prevail...but whether his complaint [is] sufficient to cross the federal court's threshold." *Skinner v. Switzer*, 131 S. Ct. 1289, 1296 (2011) (citation and internal quotation marks omitted). Thus, assessment of the sufficiency of a complaint is "a context-dependent exercise" because "[s]ome claims require more factual explication than others to state a plausible claim for relief." *W. Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85, 98 (3d Cir. 2010).

In evaluating the sufficiency of a complaint, the Court adheres to certain well-recognized parameters. For one, the Court "must consider only those facts alleged in the complaint and accept all of the allegations as true." *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 (3d Cir. 1994); *see also Twombly*, 550 U.S. at 555 (stating that courts must "assum[e] that all the allegations in the complaint are true (even if doubtful in fact)"); *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) ("[A] court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents."). Also, the Court must accept as true all reasonable inferences emanating from the allegations, and view those facts and inferences in the light most favorable to the nonmoving party. *See Rocks v. City of Philadelphia*, 868 F.2d 644, 645 (3d Cir. 1989); *see also Revell v. Port Auth.*, 598 F.3d 128, 134 (3d Cir. 2010). That admonition does not demand that the Court ignore or disregard reality. The Court "need not accept as true unsupported conclusions and unwarranted inferences," *Doug Grant, Inc. v. Greate Bay Casino Corp.*, 232 F.3d 173, 183-84 (3d Cir. 2000) (citations and internal quotation marks omitted), and "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere

conclusory statements, do not suffice." *Ashcroft*, 556 U.S. at 678; *see also Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (explaining that a court need not accept a plaintiff's "bald assertions" or "legal conclusions" (citations omitted)).

**DISCUSSION**

American Airlines advances three arguments in its motion to dismiss: (1) Ms. Brantley fails to state a claim for assault and battery, (2) she fails to state a claim for negligent hiring/supervision, and (3) her claims are preempted by the PA Workers' Compensation Act.[2] The Court will discuss each argument in turn.

### A. Assault and battery

An employer may be held responsible for the acts of its employee which cause injury to a third party under a *respondeat superior* theory if the acts were committed during the course of and within the scope of employment. *See Costa v. Roxborough Mem'l Hosp.*, 708 A.2d 490, 493 (Pa. Super. Ct. 1998). An employee's conduct is within the scope of employment if "(1) it is of a kind and nature that the employee is employed to perform; (2) it occurs substantially within the authorized time and space limits; (3) it is actuated, at least in part, by a purpose to serve the employer; and (4) if force is intentionally used by the employee against another, the use of force is not unexpected by the employer." *Id.*

In its opening brief, when analyzing the assault and battery claim, American Airlines begins by assuming that Ms. Brantley is trying to hold it responsible for the sexual assault Mr. Strickland committed at Ms. Brantley's home. Clearly, given that this assault took place somewhere other than in the workplace, American Airlines could not be responsible under a *respondeat superior* theory. Ms. Brantley clarifies, however, that the conduct she wishes to hold

---

[2] In its motion, American Airlines also argued that by way of a settlement release in a prior lawsuit, Ms. Brantley released her claims, but at oral argument on the motion to dismiss, American Airlines withdrew this argument without prejudice.

American Airlines responsible for is Mr. Strickland's behavior toward her at work.  Specifically, she cites the incident during which Mr. Strickland stared at her, whistled, and would not leave when she asked him to, which she characterizes as threatening behavior amounting to assault.  Thus, assuming that the conduct Ms. Brantley cites does amount to assault, at least one assault occurred in the workplace.

However, American Airlines argues that, "[a]n assault committed by an employee upon another for personal reasons is not within the scope of employment."  *See Matt v. Pressley*, No. CIV.A. 04-6110, 2006 WL 1192943, at *3 (E.D. Pa. May 3, 2006).  Although the *Matt* case was talking about physical assaults, at least one other court has applied that test to claims that also included harassment.  *See, e.g., Fuhrman v. Quill Corp.*, No. 1:09-CV-00841, 2010 WL 411698, at *7 (M.D. Pa. Jan. 27, 2010) (dismissing harassment and assault claims based on *respondeat superior* when it was clear that the conduct alleged was not within the scope of employment).  American Airlines, then, argues that any potential assault of Ms. Brantley at work occurred for personal reasons, which means that it could not possibly be responsible for such an act.  Ms. Brantley counters it is possible that Mr. Strickland's conduct could have been within the scope of his employment, but she does not point to any specific factual allegations that it was or attempt to distinguish the cases cited by American Airlines.  Indeed, Ms. Brantley's factual allegations seem to support that Mr. Strickland was *not* acting in the scope of his employment – she continually states that he had "no legitimate reason" to be where she was, and she argues elsewhere in her legal briefs to the Court that Mr. Strickland's actions were personal.  *See, e.g.,* Am. Compl. at ¶¶ 17, 22.  Ms. Brantley claims she is pleading in the alternative, but even setting aside the allegations that Mr. Strickland acted in the manner that he did for "no legitimate reason," apart from the fact that the actions occurred at work, Ms. Brantley has not affirmatively

pleaded any facts that would support that Mr. Strickland's actions were of a kind and nature that he was employed to perform or that they were actuated by a purpose to serve the employer. Thus, the Court will dismiss the assault and battery claim as to American Airlines without prejudice in the event Ms. Brantley can discern a way to maintain the claim notwithstanding this legal impediment.

### B. Negligent Hiring/Supervision

To state a claim for negligent supervision/hiring, a plaintiff must allege that the employer failed to "exercise ordinary care to prevent intentional harm to a third-party which (1) is committed on the employer's premises by an employee acting outside the scope of his employment and (2) is reasonably foreseeable." *Robinson v. Family Dollar, Inc.*, No. CIV. A. 14-03189, 2015 WL 3400836, at *5 (E.D. Pa. May 27, 2015). Once more, American Airlines claims that Ms. Brantley has not alleged that any harm to her took place on its premises because the actual sexual assault allegedly took place at Ms. Brantley's home. And once more, as Ms. Brantley points out, American Airlines ignores what could be characterized as stalking behavior by Mr. Strickland during work hours. Although it may not be as clear cut as a sexual assault, it is certainly possible that at least some of this threatening behavior could have caused intentional harm. American Airlines contends that Mr. Strickland's mere presence in the same terminal is not cognizable "harm," but it cites no case law in support of that contention and ignores both the existence of the PFA order and Mr. Strickland's whistling, staring, and refusal to leave Ms. Brantley alone, which is more than mere presence.

American Airlines also argues that Ms. Brantley has not alleged that Mr. Strickland acted outside the scope of his employment. To support this argument, American Airlines points to Ms. Brantley's allegations in her assault count that American Airlines is responsible for Mr.

Strickland's behavior under the doctrine of *respondeat superior*. American Airlines argues that to set forth a claim for *respondeat superior* liability, the employee must have been acting *in* the scope of his employment, making this allegation fatal to the negligent supervision claim, which requires that the employee was acting *outside* the scope of his employment. Ms. Brantley counters that she is pleading in the alternative, and that American Airlines *must* be responsible under one of her two theories. *See Bayview Loan Servicing, LLC v. Law Firm Of Richard M. Squire & Associates, LLC*, No. CIV.A.10-1451, 2010 WL 5122003, at *5–6 (E.D. Pa. Dec. 14, 2010) (allowing negligent supervision claim to survive a motion to dismiss as an alternative claim to direct/*respondeat superior* liability).

American Airlines, however, points to *Robinson*, 2015 WL 3400836, in which a negligent supervision claim was dismissed because of a similar *respondeat superior* allegation. In *Robinson*, the court dismissed an assault and battery claim because the complaint did not contain sufficient allegations that the employees were acting within the scope of their employment. *Id.* at *3. Then the court dismissed the negligent supervision claim, in part, because the plaintiff had pled that the employees were acting within the scope of their employment. *Id.* at *5. This outcome begs the question: if the allegations were insufficient to support a claim that required action within the scope of employment, how could those same allegations regarding actions within the scope of employment be enough to support dismissing a negligent supervision claim? Because, at the pleading stage, some leeway is permitted, the Court will not dismiss the negligent supervision claim simply because Ms. Brantley also attempted to plead a *respondeat superior* claim, particularly when the Court dismissed that claim as insufficiently pled.

Finally, American Airlines claims that Ms. Brantley fails to allege that Mr. Strickland had dangerous propensities of which it was aware. However, American Airlines ignores that Ms. Brantley reported Mr. Strickland's bad behavior to American Airlines and presented it with her PFA order, as well as that Mr. Strickland assaulted and/or stalked other female employees. And even if the first time Mr. Strickland allegedly violated the PFA order, American Airlines was not on notice, it certainly would have been by the next time Mr. Strickland did so. At this stage, accepting Ms. Brantley's allegations as true, Ms. Brantley has sufficiently pleaded a negligent supervision claim.

### C. Workers' Compensation

American Airlines also argues that Ms. Brantley's claims run afoul of the PA Workers' Compensation Act. It argues that all instances of workplace injury fall under the Workers' Compensation Act unless the harm was motivated by personal animus. "For an act to fall within the personal animus exception, it cannot be one which would normally be expected in the workplace." *Alers v. City of Philadelphia*, 919 F. Supp. 2d 528, 561 (E.D. Pa. 2013) (quoting *Jackson v. Lehigh Valley Phys. Grp.*, Civ. A. No. 08-3043, 2009 WL 229756, at *7 (E.D. Pa. Jan. 30, 2009)). American Airlines argues that Mr. Strickland's presence in the same terminal where Ms. Brantley works was something that could clearly be expected in the workplace. In addition, it argues that Ms. Brantley has not alleged that Mr. Strickland's whistling was personal, particularly because she also alleged that he assaulted and harassed other women. *See Hancuff v. Prism Tech. & Assemblies, LLC*, 357 F. Supp. 2d 828, 834 (W.D. Pa. 2005) (personal animus exception did not apply where third party was motivated by general bias against women and not personal animosity towards the plaintiff).

9

Ms. Brantley counters with a citation to a case before this Court, in which the Court declined to hold that the Workers' Compensation Act preempted an intentional infliction of emotional distress claim based on workplace harassment. *See Graudins v. Retro Fitness, LLC*, 921 F. Supp. 2d 456, 466 (E.D. Pa. 2013) ("Here, a reasonable jury could find that the alleged emotional distress [suffered by Ms. Graudins] arose from harassment personal in nature and not part of the proper employer/employee relationship. In particular, the Court notes that a jury could conclude that Paul Carr's alleged assault was motivated by personal reasons, and that the question of what motivated the harassment suffered by Ms. Graudins is inherently fact-intensive.") (internal citations and quotations omitted). Although it is possible that Mr. Strickland's motives were not personal and merely reflected a general animus towards women, the personal nature of the sexual assault in Ms. Brantley's home that preceded the workplace events suggests that it is at least reasonable to infer that the motives were personal, particularly at this very early stage of the case. Thus, the Court will not dismiss Ms. Brantley's claims as preempted.

**CONCLUSION**

For the foregoing reason, the Court will grant in part and deny in part American Airlines' motion to dismiss. An appropriate Order follows.

BY THE COURT:

S/Gene E.K. Pratter
GENE E.K. PRATTER
United States District Judge